IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TUSKEGEE UNIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-CV-34-WKW |
| | ) | [WO] |
| NATIONAL UNION FIRE | ) | |
| INSURANCE COMPANY OF | ) | |
| PITTSBURGH, PA, AMERICAN | ) | |
| INTERNATIONAL GROUP, | ) | |
| INC., THOMPSON FACILITIES | ) | |
| SERVICES, LLC, LEXIS | ) | |
| COLLINS, CANDICE HERRING, | ) | |
| KAELA NELSON, and | ) | |
| SHANNON SPIRES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the Recommendation of the Magistrate Judge. (Doc.
# 26). The Magistrate Judge recommends remanding this action because
Defendant National Union Fire Insurance Company of Pittsburgh failed to show
that it is more likely than not that more than $75,000 was in controversy at the time
it removed this action from Alabama state court. (Doc. # 26.) National Union has
timely objected, contending that the Magistrate Judge failed to count all that should
have been counted in determining how much money was in dispute. Upon an
independent review of the record and a *de novo* determination of those portions of

the Recommendation to which National Union has objected, the court concludes

that the objection is due to be overruled and the Recommendation adopted in part

and modified in part.  *See* 28 U.S.C. § 636(b).

## I.  DISCUSSION

This case began when Plaintiff Tuskegee University was sued in Alabama

state court by some of its former students for negligence in handling mold found in

the students' dormitory rooms.  Tuskegee hired Defendant Thompson Facilities

Services to maintain and repair the buildings on campus; Thompson was also a

defendant in one of the underlying actions.  (*See* Doc. # 1-1, at 5.)  Per the contract

with Tuskegee, National Union designated Tuskegee as an additional insured on its

insurance policy insuring Thompson.  (Doc. # 1-1, at 5–6.)  After being sued,

Tuskegee filed a declaratory judgment action in state court seeking a declaration

that "it is an additional insured pursuant to Thompson's insurance contract with

National Union and that National Union has a duty to defend and indemnify

Tuskegee."  (Doc. # 1-1, at 7.)  National Union removed the action to this court;

Tuskegee sought remand; and the Magistrate Judge entered a Recommendation

that the motion be granted because the amount-in-controversy requirement had not

been met.  (*See* Docs. # 1, 16, & 26.)

National Union claims this was error.  It argues that the Magistrate Judge

ignored the value of the underlying suits and failed to make reasonable, logical

deductions in determining what it might cost to defend the suits. (Doc. # 27.) And it contends that the Magistrate Judge's error concerning the potential cost of indemnification was categorical — that the Magistrate Judge wrongly concluded that the indemnification claim simply could not be counted toward the amount in controversy, when in fact it could and should.

## A.    <u>What counts?</u>

There is indeed a difference between saying that the potential cost of the indemnification claim cannot be counted at all and finding that the value of that claim has not been shown to exceed a certain amount. In alternative rulings, the Magistrate Judge did both. In the first, the Magistrate Judge "conclude[d] that where, as in this case, a duty to indemnify claim is brought prior to the resolution of the underlying lawsuits, the value of the underlying plaintiffs' damages is unknown and purely speculative because the duty to indemnify claim is not ripe for adjudication until the underlying lawsuits are concluded." (Doc. # 26, at 8.) In other words, because "the duty to indemnify claim is not ripe, and it would be subject to dismissal without prejudice if it remained before this court due to a lack of subject matter jurisdiction," it would be inappropriate — advisory — to consider what that claim might be worth. (Doc. # 26, at 9.)

National Union is correct that this conclusion does not fully account for the posture of the case. Regardless of whether there would be subject matter

jurisdiction over a stand-alone indemnification claim brought prior to judgment, it is clear that the jurisdictional ripeness requirements are met when a party seeks a declaratory judgment regarding both the insurer's duty to indemnify and its duty to defend. *See Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273–74 (1941); *Edwards v. Sharkey*, 747 F.2d 684, 686–87 (11th Cir. 1984). This is because the duty to defend is more extensive than the duty to indemnify. *See Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005). Thus, a ruling that National Union owes no duty to defend means that it need not indemnify either. Were this to happen, National Union "would have prevailed on defense and indemnity at a stroke. No more is needed to show that the value of indemnity was 'in controversy' on the date this federal case began." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 539 (7th Cir. 2006); *see id.* at 538–39 ("Although a plaintiff's asserted injury may depend on so many future events that a judicial opinion would be advice about remote contingencies — and this aspect of ripeness is part of the case-or-controversy requirement — these parties' disagreement about potential indemnity is part of a larger controversy that is neither conjectural nor speculative." (citations omitted)).

In other words, the focus remains on what is at stake. And the Eleventh Circuit has made it clear that "the value of declaratory relief is the monetary value of the benefit that would flow to the plaintiff if the relief he is seeking were

granted." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) (internal quotation marks, alteration, and citation omitted). Thus, "when an insurer seeks a judgment declaring the absence of liability under a policy, the value of the declaratory relief to the plaintiff-insurer is the amount of *potential* liability under its policy." *First Mercury Ins. Co. v. Excellent Computing Distribs., Inc.*, 648 F. App'x 861, 865 (11th Cir. 2015) (citation omitted). That Tuskegee and not the insurer is the plaintiff here makes no difference; the value of relief is the same because it is the potential cost of the defense and judgment that Tuskegee would pay from its own pockets if the court does not declare that National Union is on the hook.

The former Fifth Circuit's decision in *Stonewall Insurance Co. v. Lopez* is instructive on this point. 544 F.2d 198 (5th Cir. 1976).[1] There, a liability insurer brought a declaratory judgment action against its insured, claiming that coverage was obtained only after the car accident at issue took place. *Id.* at 198. Though there had yet to be an underlying finding of liability in the state-court proceeding, the district court granted relief, and the insured appealed on jurisdictional grounds. At the time, the diversity statute required the amount in controversy to exceed $10,000, and the insured argued that the amount in dispute was $10,000 flat — the

---

[1] Decisions of the former Fifth Circuit rendered prior to close of business on September 30, 1981, are binding on this court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

limit of coverage under the insurance policy. *Id.* at 199. The Fifth Circuit rejected this argument, explaining that the controversy "involve[d] not only [the insurer's] *potential* liability for $10,000, but also [the insurer's] obligation to defend the state-court action." *Id.* (emphasis added). Though in some ways the factual inverse of this case, the court's opinion in *Stonewall Insurance* nevertheless confirms that the *potential* amount of indemnification may be combined with the cost to defend in determining the amount in controversy. *See id.*; *see also First Mercury Ins. Co.*, 648 F. App'x at 865 (finding amount in controversy was met prior to underlying determination of liability because "if [insurer] loses its declaratory judgment action, it *may* face $1,000,000 or more in coverage liability" (emphasis added)); *Meridian Sec. Ins. Co.* 441 F.3d at 539 (collecting cases in which courts have "count[ed] the potential outlay for indemnity toward the amount in controversy, whether or not adjudication about indemnity should be deferred until the state case is over").

## B. What is the value?

Fortunately, the Magistrate Judge's alternative ruling is on surer ground. "[A]ssuming, *arguendo*, that the potential value of the underlying lawsuits may properly be considered," the Magistrate Judge still recommended remand because "the[] prayers for damages are too speculative to support a finding that the amount in controversy is met." (Doc. # 26, at 9–10.) Of course, National Union objects to

this line of reasoning as well, and as evidence of the concreteness of the value of the underlying claims points out that each of the "underlying plaintiffs allege serious physical injury for which they seek recompense," that they "seek mental anguish damages for their inability to continue their college careers and pursue their various dreams," and that "[e]ach of the underlying plaintiffs claim Tuskegee knowingly or intentionally concealed the presence of mold in the dorms and seek punitive damages." (Doc. # 27, at 6–7.) "[W]hen the value of all three underlying cases is considered," National Union asserts, "the amount in controversy is established by the preponderance of the evidence." (Doc. # 27, at 7.)

The court has heard and rejected similar arguments once before. *See Nelson v. Tuskegee Univ.*, No. 3:17-cv-512-WKW, 2018 WL 1719715 (M.D. Ala. Apr. 9, 2018). When two of the same underlying plaintiffs sought to remand their suit against Tuskegee and Thompson, the two defendants — like National Union here — cited the state-court plaintiffs' health problems, mental anguish, future earnings, and potential for recovering punitive damages as evidence that the amount in controversy was met. The court was not persuaded:

> In reality, the court has no idea from the Complaint or from Thompson's submissions how much scholarship money Ms. Nelson was awarded and had to forfeit; no idea how much student loan debt Ms. Spires took on; no idea how much Ms. Nelson's medical costs were; and no idea of the effect on Ms. Nelson's future that the mold exposure had. While the court is permitted to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings, it cannot "suspend reality or shelve common

7

sense" in determining the amount in controversy. *Roe* [*v. Michelin N. Am., Inc.*], 613 F.3d [1058,] 1061–62 [(11th Cir. 2010)] (internal quotation marks and citations omitted).

The numbers that Thompson offers are just numbers, guesses at how much money is actually at issue. Perhaps Thompson is correct that Ms. Nelson's medical expenses were great, or that the costs of forfeiting the scholarships at Tuskegee and transferring to a different school added up to more than $75,000, or that Ms. Nelson is claiming all the future earnings she would have made had she become an architect. But perhaps not. Based on the evidence before it, the court really has no way of knowing. On this record, "[t]he absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." *Pretka* [*v. Kolter City Plaza II, Inc.*], 608 F.3d [744,] 752 [(11th Cir. 2010)] (quoting *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1215 (11th Cir. 2007)). "[N]either the defendants nor the court may speculate in an attempt to make up for the notice's failings." *Id.* (quoting *Lowery*, 483 F.3d at 1214–15).

*Nelson*, 2018 WL 1719715, at *2–3.

Save for the two additional complaints from the two additional state-court plaintiffs, National Union does not present any different or additional evidence than did Tuskegee and Thompson. (Doc. # 1-1, at 48, 55.) And those complaints are no more specific than were Ms. Spires's and Ms. Nelson's, and they provide no more evidence about what the amount in controversy might be.

The only other difference is the cost of defending the three suits. But here again National Union submits no additional evidence about what those costs actually have been or are projected to be. Instead, it simply cites a 2004 law review article for the proposition that the cost to insurers "to defend claims in

which suit was filed averaged $35,000 per claim," and notes that the median hourly rate charged by attorneys in 2014 ranged from $175 to $199.  (Doc. # 27, at 9.)  When the court must resolve all doubts in favor of remand, *see Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994), this is an insufficient basis for it to agree that "the costs of defense incurred in these three matters already more than likely exceeds the jurisdictional minimum" (Doc. # 27, at 9) — or even that it is more than likely to exceed that number in the future.

## II.  CONCLUSION

Accordingly, it is ORDERED that the Recommendation of the Magistrate Judge is ADOPTED in part and MODIFIED in part.  It is further ORDERED as follows:

1.  National Union's objection to the Magistrate Judge's Recommendation (Doc. # 27) is OVERRULED.

2.  Tuskegee's motion to remand (Doc. # 16) is GRANTED.

3.  This action is REMANDED to the Circuit Court of Macon County, Alabama.  The Clerk of the Court is DIRECTED to take appropriate steps to effectuate the remand.

DONE this 15th day of August, 2018.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE